JUDGMENT

Justice VILES.
This case came on for oral argument on November 8, 1996 before all three Justices. Julie Looney was employed by Bingo Outpost (now Cherokee Nation Enterprises, Inc. or CNE) from September, 1993 until she was terminated from the position of the floor sales clerk on or (1) about September 6, 1995. Ms. Looney switched between full-time and part-time employment several times, for personal reasons.
Testimony showed that the position of floor sales clerk earned large sums in tips, while jobs similar in many ways did not earn such tips, thereby creating great disparity among pay rates of co-workers and making the job of floor sales clerk a highly-sought prize. When Ms. Looney sought other employment after leaving CNE, she was unable to match her pay at CNE (because of the tips she formerly had). She did not apply for several CNE jobs which her former employer brought to her attention [1], again in large part, because they did not have the large tips of floor sales clerk.
Respondent said that her termination was a layoff and she was subject to rehire[2] . She appealed her termination and received a confusing justification in Plaintiff’s Exhibit 1, a letter dated December 21, 1995, to Plaintiff from George Hummingbird, Bingo Outpost Director of Operations. Mr. Hummingbird says that he “must uphold the previous decision to a certain degree.” (“A certain degree”? Either she’s terminated or she’s not.) He goes on to say that “Your situation is not covered in the Cherokee Nation Outpost, Inc., Bingo Outpost Personnel Employee Information Manual per se.” We were surprised that CNE management would admit that any situation was not covered by their Manual. No testimony was offered to explain the role of Bingo’s Board of Directors in reviewing Ms. Looney’s file (See Plaintiffs Exhibit 3).
*19 CNE claims that Julie Looney lost her job through a reduction in force and that CNE followed the correct personnel policies for such a reduction in force. However when this Court looks at the reduction in force, we find that the “force” was reduced by only one person—Julie Looney. Further, we listen to Leigh Ann McGee, CNE’s Director of Administration, and can’t tell whether Julie Looney was a full-time or a part-time employee for the purposes of section 5.03[3]. Her attorney stated that she was a part-time employee at the time of the termination, so we assume she was part-time. Given that status, it would appear that CNE did follow its own rules. Although these rules are presented to the Court as numbered pages 22 and 23 inserted (2) after the “Cherokee Nation Outpost, Inc., Bingo Outpost, Employee Information Manual”, Respondent’s Exhibit 5, it’s not clear where they originated, (of what, are they pages 22 and 23?) The Court hopes that newer policies are in effect now, deleting the “at will” provisions in the old ones, among other changes.
So did CNE follow its own policies? Does a corporation netting more than $200,000 a month (per reports in the Cherokee Advocate) really need to terminate only one part-time employee to put things in balance?[4]
For her part, Julie Looney can offer as the reason she was fired only that she gave out the name and phone number of CNE’s Chief Executive Officer, Gerald Cantrell. She gave the number to unhappy patrons of the Bingo Outpost. This would seem to be commendable instead of justification for termination. It is unclear, however, w[7]hat company policy called for her to do.
Ms. Looney cites that she was the top salesperson and w7as therefore the last one wTho should have been fired. Does being the “top salesperson” help the corporation or only help Ms. Looney in terms of tips? We believe it helps both, and it’s even more curious, therefore, that she was laid off.
We now turn to the matter of Ms. Looney’s credibility. She agrees that when a person says something under oath, he or she should tell the truth (See Transcript, p. 72, lines 12-15), but on that same page, she says that she reported to the U.S. Government in 1995 that she earned only $14.00 in tips.[5] On page 77 she admitted lying to the IRS in that she actually earned at least $100 per day in tips.[6] If Ms. Looney admits to lying to the IRS (“Under penalties of perjury ..the tax forms read), how much credibility should we give her testimony? (3)
And what does the Cherokee Constitution call for this Court to do? It calls for us to insure that no employee of the Cherokee Nation is terminated “except for *20 cause”[7]. It doesn’t require that the tribe or tribal entity provide a job for life or indeed for any given period, just that when it terminates someone, that due process be followed and that the firing not be for the “wrong reasons”. This Court has carefully avoided listing the “wrong reasons”, but our series of decisions gives one insight into some permissible reasons. Objective business decisions which require a reduction in expenditures and so a reduction in personnel have qualified before (the Gos-sett case, for example)[8].
When all things are considered, we are unable to say that Ms. Looney was terminated without cause. We find for the defendant Cherokee Nation Enterprises, Inc.
IT IS SO ORDERED.
Chief Justice BIRDWELL.
Justice KEEN Concurs in the result.

. Transcript, p. 65, line 5.

. Petitioner's Exhibit 2, a memorandum dated January 6, 1996, from Susie Scott, Human Resources Director to Gerald Cantrell, Interim CEO, citing Section 5.03 of the Outpost Manual.

. See Transcript, p. 58, lines 8—12 and Petitioner's Exhibit 2.

. See, for example, Cherokee Advocate, April 1996, p. 11, quoting Jess Bryant, bingo corporation chairman, that the corporation’s dividends to the tribe grew from $150,000 to $200,000 per month during the first four months of the Byrd administration, that is August 14, 1995 through approximately December 14, 1995. It is likely that net profits (admittedly, some from smokeshops) were larger than the dividends.

. While claiming that she did not know if tips were taxable. Transcript, p. 76, line 24-25. At line 5 on the same page, she also gave disturbing testimony to the effect that "we was told that we did not have to report our tips by our management.", in response to a question about reporting to the Federal Government, apparently for tax purposes.

. On one day, she made "about three eighty-five” ($385). Transcript, p. 87, line 23.

. Cherokee Constitution of 1975, Article XII.

. In the Matter of Lucille Gossett v. Cherokee Nation, et al. 87-CN-07, Judicial Appeals Tribunal, March 13, 1987, Transcript, p. 70.